## IN THE MATTER OF THE AMERICAN BRIGANTINE CONSUELO.

### IN ADMIRALTY. APPEAL ON DEMURRER.

### JULY TERM, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

Chapter VII. of the Laws of 1886 is not repealed by Chapter LXXIII. of the same year.

Opium concealed in the manner described in Chapter VII of the Laws of 1886, must be deemed to be with fraudulent intent, and in violation of the laws restricting the importation of opium, as well as those prohibiting it.

The vessel which commits the aggression is treated as the offender, as the guilty instrument or thing to which the forfeiture attaches, without any reference whatever to the character or conduct of the owner, or the complicity of the master or other officer in the illicit act.

The libel sufficiently avers the offense under the statute, in alleging that at the time of the arrival of the brigantine in the port of Kahului, there was contained on board the opium placed as described.

### OPINION OF THE COURT, BY McCULLY, J.

The Attorney-General, April 29, 1889, filed a libel and complaint against the American merchant brigantine Consuelo, then lying in the port of Kahului, Island of Maui, whereof J. T. Robertson was master, etc., and against all persons lawfully intervening, charging that this vessel arrived within this King-

dom at the port of Kuhului, on the 21st of April, on a voyage from San Francisco, and entered at the Custom House in Kahului.

That at the time of her arrival there was contained on board three hundred tins of opium, about one hundred and fifty pounds, "and that the said opium was then and there concealed in a certain secret and disguised place constructed in said brigantine, to wit, in a secret and hidden pit and box beneath floor of the lazaret and near the rudder-post of said brigantine."

That the said opium was not legally brought into the Kingdom, and praying that process issue and that the vessel and the opium be seized and decreed forfeited for the use of the Hawaiian Government, etc.

The seizure was made as prayed for. Before Mr. Justice McCully in Chambers, Mr. A. S. Hartwell, proctor for respondents, submitted the following:

## DEMURRER TO THE LIBEL.

The Oceanic Steamship Company, a foreign corporation incorporated and existing under the laws of the State of California, United States of America, as sole owner and claimant of said American brigantine Consuelo, intervening to the libel and complaint of the Hawaiian Government, by Clarence W. Ashford, Attorney-General of the Kingdom, against said brigantine and all persons lawfully intervening for their interest therein, by protestation, not confessing or acknowledging any of the matter and things in the libellant's said libel and complaint contained to be true in such manner and form as the same are therein and thereby alleged, demurs to said libel and complaint and for causes of demurrer says:

1. That by the laws of the Hawaiian Islands it doth not pertain to this honorable Court, nor is it within the cognizance of this Court at all, to interfere respecting the said brigantine, her boats, tackle, apparel or furniture, nor to condemn the same or any part thereof as forfeited to the use of the Hawaiian Government.

45

2.  That by the laws of the Hawaiian Islands said libel and complaint and the matters therein contained, in manner and form as the same are therein stated and set forth, are not sufficient to work a forfeiture of, or to enable this honorable Court to condemn as forfeited to the use of the Hawaiian Government, said brigantine, her boats, tackle, apparel or furniture.

3.  That Section 3 of Chapter VII. of the Session Laws of 1886, entitled "An Act supplementary to Article 26, Chapter IX. of the Civil Code," and approved the 12th day of July, A.D. 1886, and particularly that part of said Section which reads, "and all ships or boats coming into any port of this Kingdom, having opium on board concealed in false bulkheads, false bows, double sides or bottom, or in any secret or disguised place whatsoever, constructed in such ships or boats, shall be forfeited," is in conflict with the provisions of Chapter LXXIII. of said Session Laws of 1886, entitled "An Act to regulate the importation and sale of opium in this Kingdom," and approved the 15th day of October, A.D. 1886, and is also unconditionally repealed by Section 11 of said last above mentioned Act.

4.  That there is not now in force any law of the Hawaiian Islands whereby this Court can or ought to pronounce in favor of said libel and complaint, or decree a forfeiture of said brigantine, her boats, tackle, apparel or furniture, for or by reason of any of the matters and things in said libel and complaint stated and set forth.

5.  That said libel and complaint is in other respects uncertain, informal and insufficient.

Wherefore the respondent prays that said libel be dismissed, that it be allowed to go without day, that it have its reasonable costs herein most wrongfully sustained, that its bond herein filed and given for obtaining the release of said brigantine be cancelled, and that this honorable Court make such further and other order in the premises as may be deemed concordant with justice.

Hearing being had, the demurrer was overruled May 10th, whereupon appeal was taken to the Court in Banco.

At the July Term the proctor for the respondents presented the following argument:

### BRIEF OF COUNSEL FOR OWNERS AND CLAIMANTS.

1. The cases in this Court are:

*The Alden Besse*, before Harris, C. J.

*The Mary Belle Roberts*, 3 Hawn., 823.

*The Kalakaua*, 4 Hawn., 325.

*The C. D. Bryant*, before Preston, J.

The statute (Section 655 Civil Code) under which these cases, except the Bryant, were brought, is equally peremptory with that under which the present libel is brought, in requiring that the vessel in which dutiable goods are imported, without payment of duties thereon, "shall be forfeited."

The Court in *The Alden Besse* refused to decree the forfeiture, the master or owner not being implicated.

The Full Court expressed a similiar view in the *Kalakaua* case. These are later cases than that of the *Mary Belle Roberts*, (in which the Court held that the ship may be forfeited by the unlawful proceeding of the master), and are fairly to be regarded as establishing the law that unless the master or owner is implicated, the ship will not be forfeited.

In the case of the *Bryant*, the only question argued and decided was the meaning and construction of the Act in respect of the words "concealed or disguised place," which, as counsel for the claimants argued, should require proof that the place was expressly prepared for such concealment, but the Court held that it was enough if it was in fact a concealed or disguised place.

In the present case, the libel does not aver the material fact for forfeiture, that the master or owner was guilty of complicity, either by gross negligence or otherwise, in the concealment of the opium.

It is not enough to aver that, "the bringing of said opium into this Kingdom was unlawful," unless the unlawfulness is specified. *U. S. vs. Claflin*, 13 Blatch., 178. The libel does not even charge that the opium was brought into this Kingdom, but

merely that it was on board the vessel "at the time of its arrival." It may have been placed there on its arrival, for all that appears in the libel.

2. The libel prays that this vessel be confiscated, on the bare assertion that, "at the time of its arrival at the port of Kahului (April 21 last), there were on board three hundred tins of opium concealed in a secret and hidden pit and box beneath the floor of the lazaret and near the rudderpost of said brigantine."

This is not an averment that the ship came into the said port having the opium on board, and unless it brought the opium into the port, there is no case under the statute. No inferences ought to be made against the ship in such a highly penal proceeding.

3. The Act of July 12, 1886, is superseded and repealed by that of October 15, 1886.

The former Act is entitled, "An Act supplementary to Article 26, Chapter IX. of the Civil Code," which Article 26 is entitled, "Of Smuggling and other Frauds against the Revenue Laws." The supplementary Act is clearly intended to prohibit the importation of opium, and to facilitate the detecting of such importation.

Section 8 of the earlier Act declares that, "any person who shall be in any way knowingly concerned in carrying, removing, depositing or concealing, or in any manner dealing with any opium or other article, the importation whereof is prohibited * * * shall be punished," and Section 3 declares that, "all ships coming into any port of this Kingdom having opium on board, concealed, etc., shall be forfeited."

On the other hand, the later Act is entitled, "An Act to regulate the importation and sale of opium in this Kingdom," which the former Act absolutely prohibited. It is impossible to say with reason that under the later Act, allowing opium to be imported and sold by licensed dealers, all persons carrying or dealing in opium shall be punished therefor. It is equally wrong to hold that under the same Act all vessels shall be

forfeited if they come into port having opium on board, "concealed in any secret or disguised place." Opium is an article which, like wine or cigars, could properly and lawfully be kept in secret and hidden places on board.

The Act of October 15 is plainly opposed to that of July 12, the one absolutely prohibiting, the other absolutely allowing, the importation and use of opium. The former Act could not properly be strained into meaning, "An Act to promote the business of licensed opium dealers;" certainly it was not an Act to regulate (but to prohibit) the importation and sale of opium.

To give to the earlier Act the meaning and object now sought to be given it, would require the Court to say that its title does not properly express such meaning and object, and therefore that it is unconstitutional for such intent.

The libel can be sustained only by reading the earlier Act as modified by the later, as follows: "Section 8. Any person not a licensed dealer in opium, or one who has a physician's certificate that opium is a proper remedy for the disease from which he is suffering, who shall be concerned in carrying or dealing in opium, shall be punished," etc.

"Section 3. All ships, etc., having opium not imported by or belonging to a licensed dealer or purchased by any person having a physician's certificate  *  *  * shall be forfeited."

It is enough to say that the libel is not drawn to meet the Act as so modified. The illustration shows that such a result or meaning could not be extracted from the July Act consistently with the object expressed in its title.

4. The still later Act of September 11, 1888, re-enacted in terms the Act of 1880, prohibiting the importation of opium except by the Board of Health, and expressly repealing the Act of October 15, 1886, does not operate to re-enact the Act of July 12, 1886.

In the *King vs. Yung Hong*, this Court recently held that the Act of 1880 was not in force, by reason of the attempted, but as the Court held uncertain and provisional, re-enactment at the Special Session of 1887. *Ante*, page 359.

In the *King vs. Young Tang* (*ante*, page 49), the Court had also held that the Act of 1880, making the possession of opium an offense, was not in force after the Act of October 15, 1886.

The Act of September 11, 1888, contains a clause to the effect that no person or vessel is thereby exempted from the penalty "prescribed by the laws of the Kingdom against smuggling." But this libel is not brought to enforce a penalty prescribed by the laws against smuggling, but under the remarkably sweeping and peremptory Act of 1886, whereby "all ships coming into any port in this Kingdom having opium on board, concealed in any secret or disguised place whatsoever constructed in such ships, shall be forfeited."

In considering whether this Act of July 12, 1886, is now in force, the decision in *The King vs. Bradley*, 4 Hawn., 187, is immaterial, for that case decided that a conviction on an indictment for smuggling opium required a sentence of fine and imprisonment under the prohibiting Act of 1874, and did not allow a sentence of fine or imprisonment under the 655th Section of the Civil Code, re-enacted in Section 12, Chapter LXX. of the Penal Code.

In the Bradley case, the defendant by importing opium had violated the express prohibition against its importation contained in the Act of 1874, and it was immaterial whether in so doing he had or had not violated the provision against smuggling contained in the 655th Section.

The remark of the Court in the Bradley case, that "notwithstanding that opium is now prohibited, it is still an object of smuggling," was in no way necessary in order to decide that the defendant could be sentenced under no other Act but that of 1874, which he had in terms violated. But whether that view, which the Court then expressed as to the meaning of the word "smuggling," was *obiter dictum* or not, the case presented by this libel is not affected by it, for the sole question now arising is whether the Act of July 12, 1886, is still in force.

By the reasoning of the Court in the Young Tang case, the Act of July 12 was repealed by the Act of October 15.

If, as this Court held in the Young Tang case, the October Act repeals by implication the Act of 1880 prohibiting private importation of opium, it must by force of the same reasoning be held that it°repeals the July Act, which punishes anyone concerned in or dealing with opium, and confiscating every ship having it on board in any secret place.

5. To construe the Act so as to require the forfeiture of the vessel for no act, negligence or fault of either the owner or captain, but from the mere fact that on its arrival here opium was on board in a concealed place, would violate the provisions of the treaty by which the property of American citizens is entitled to " ample protection." Such a view of the law would not be ample protection, for it would allow the confiscation of the whole fleet of American merchant vessels doing business with this country, since no vessel can be absolutely exempt from having opium stowed away upon it, by passengers or by the crew.

" An Act of the United States ought never to be construed to violate the law of nations, if any other possible construction remains, and not to affect neutral commerce further than is warranted by the law of nations, as understood in the United States." *Murray vs. The Charming Betsey*, 2 Cranch's R., 64.

" The maxim that penal laws are to be construed strictly does not imply that the intention of the Legislature, as manifested by their words, is to be overruled; but that in cases where the intention is not distinctly perceived, where, without violence to the words or apparent meaning of the Act, it may be construed to embrace or exclude a particular case, where the mind balances and hesitates between the two constructions, the more restricted construction ought to prevail—especially in cases where the act to be punished is in itself indifferent, and is rendered culpable only by positive law." *The Adventure and Cargo*, 1 Brockenbrough's R., 235.

On the whole, counsel for the owners claim that the ship ought not to be forfeited on this libel.

By the Court.

The point in the demurrer numbered three specifically sets up that the Act under which this libel is brought has been repealed by a later statute, by being in conflict with the provisions of it and by the general clause found in Section 11 that laws in conflict are hereby repealed.

The former Act is Chapter VII. of the Laws of 1886, approved July 12, the latter is Chapter LXXIII. of the same year, approved October 15. Chapter LXXIII. is "An Act to Regulate the Importation and Sale of Opium in this Kingdom." It provides that a license may be granted to one person to import and sell opium in this Kingdom. The licensee is authorized to import opium through the Custom House, paying a duty of fifteen per cent. *ad valorem* and a stamp charge of one dollar on each half-pound imported. . All opium seized which has been brought into the Kingdom without paying duty, and all opium which has not been stamped, shall be forfeited to the Government, and shall be stamped and may be disposed of to the party who has received the license, upon his paying the duty and the stamp.

This is all which this Act contains relating to the importing of opium, and it is impossible to conceive in what way it conflicts with and so repeals the provision in Chapter VII., that all ships coming into any port of the Kingdom having opium on board concealed in false bulkheads, false bows, double sides or bottom, or in any secret or disguised place whatsoever, constructed in such ships or boats, shall be forfeited. Opium concealed in the manner described must be deemed to be so with a fraudulent intent, and in violation of the laws restricting the importation of opium as well as of those prohibiting it. It would equally be so if it could be supposed, as was suggested in the argument, that it was done by the one licensed dealer who was authorized to import, for he must pay duty and have his tins stamped. The provision of Chapter VII. is one of the protections given to the licensed importer against illicit traffic.

By no rational inference can it be held that the later Act authorizing a limited importation with duties to be paid, and stamps to be affixed to every tin, is repugnant to the former in respect to the prohibition of concealment of opium in disguised and secret places.

But if this Chapter VII. was not repealed by its repugnancy to Chapter LXXIII., it was not necessary to re-enact it in the Act of September 11, 1888, passed in consequence of the decision of this Court in *The King vs. Yung Hong.* Chapter VII. is an Act supplementary to Article 26 of the Civil Code: "Of Smuggling and other frauds against the revenue laws." The clause under which this libel is brought supplements the previous provisions against smuggling by making it an offense to have opium on board a vessel under the circumstances given, without regard to any attempt to land it. It is distinctly different in its scope from the statutes concerning the possession and use of opium, which had to be repealed when a license had been granted to sell and use it, and to be expressly re-enacted when the statute authorizing a license was in its turn repealed.

The contention that the Court will not decree the forfeiture of a vessel unless the complicity of the master or other officer in the illicit act is shown, is not in our view supported by the Hawaiian cases cited, and is not supported by the text of the statute. *In Re The Mary Belle Roberts*, 3 Hawn., 823, where the captain had concealed opium, a part of which he had landed, question was raised whether the ship, which is the property of innocent third parties, be forfeited by the unlawful proceeding of the master. The Court say it would be sufficient to make answer that the statute of this Kingdom expresses in language too plain to admit of other construction, that such a penalty may be enforced.

The supplementary Act which we are considering differs from the Act which it supplements in this, that the penalty for having opium in a secret or disguised place is the single one of forfeiture of the ship.

The Attorney-General can then proceed in no other form. The meaning of the statute is unmistakable. The administration must be trusted with the discretion of proceeding under it in such a way as shall commend itself to the sense of justice of the nations having commerce with us.

Customs laws of great severity are found among the statutes of all commercial nations. "The vessel which commits the aggression is treated as the offender, as the guilty instrument or thing to which the forfeiture attaches, without any reference whatsoever to the character or conduct of the owner." Per Mr. Justice Story, cited *In Re The Mary Belle Roberts.*

The libel sufficiently avers the offense under the statute, in alleging that at the time of the arrival of the brigantine at the port of Kahului there was contained on board the opium placed as described. The language of the statute in the earlier part of the section prescribes prohibited goods "found on any ship within the limits of any port," and in the latter part "having opium on board concealed," etc.

The demurrer is overruled on all points with costs.

The respondents have leave to file answer within ten days.

*C. W. Ashford* (Attorney-General), for the libel.

*A. S. Hartwell,* proctor for respondents.